In the Matter of STATE CAPITAL COR-
PORATION, Florida Consolidated Eq-
uities Corp., First Continental Realty
Corp., Berkley Multi-Units, Inc., Multi-
National Motel Management, Inc.,
GreenAcres Country Day School, Inc.,
Booi Services, Inc., P. Jodana, Inc.,
Standard Bearings & Parts, Inc., Resort
Condo Motel, Inc., Pied Piper Learning
Center, Inc., Sunny Beach Motel, Inc.,
Debtor(s).

Bankruptcy Nos. 85–430 thru
85–440 and 85–447.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 22, 1985.

Donald Schutz, Tampa, Fla., for debtor.

Joseph Gassen, Miami, Fla., for Berkley
Multi-Units.

Charles Ketchey, Tampa, Fla., for Green-
Acres Country Day.

Raymond Ray, Fort Lauderdale, Fla., for
Multi-National.

MEMORANDUM OPINION ON REPORT
AND RECOMMENDATIONS OF
THE EXAMINER

ALEXANDER L. PASKAY, Chief Judge.

On February 15, 1985, State Capital Cor-
poration (State Capital) and eleven other
corporate entities affiliated with State Cap-
ital filed their respective Petitions for Re-
lief under Chapter 11 of the Bankruptcy
Code. Shortly after the commencement of
these cases, Gerald Lewis, the Comptroller
of the State of Florida, filed a Motion and
sought the appointment of a Trustee, or in
the alternative, the appointment of an Ex-
aminer. The Motions were heard in due
course and while the Debtors did not op-
pose the appointment of an Examiner, they
vigorously resisted the appointment of a
Trustee. At this point it should be noted
while a joint administration of these estates
were requested shortly after the com-
mencement of this case, there was no order
ever entered by this Court directing a joint
administration or a substantive consolida-
tion of the estates of any of these Debtors.
However, in fairness it should be noted
that this Court authorized counsel for the
Debtors to carry on all papers filed in the
name of the entities and the respective case
numbers in order to save paperwork with a

clear understanding, however, that any papers filed in the lead case, i.e. State Capital, must also be filed in the case of the particular Debtor affected by the particular paper.

At the duly scheduled hearing on the Motion filed by the Comptroller, the Court heard statement of counsel for parties of interest and since there was no real opposition to the Motion, on April 4, 1985 this Court appointed Mr. Logan Browning as Examiner for the estates of all twelve entities. The order directed the Examiner to investigate the affairs of these debtors and to submit a recommendation whether or not a Trustee should be appointed and to make any additional recommendations as to the proper course to follow concerning the administration of the estates of these Debtors.

On May 29, 1985, the Examiner filed his report. The report in addition to analyzing the affairs of these Debtors, also contained certain specific recommendations. The Debtors after having received the copy of the Examiner's Report filed their joint response and took exceptions to some of the findings of the Examiner and especially took strong exceptions to the Examiner's characterization of some of the transactions which involved some of these Debtors.

At the duly noticed hearing, this Court heard detailed testimony of the Examiner, statement of counsel for the Debtors and counsel for the Comptroller and also for counsel for the Securities and Exchange Commission and, based on this, now makes and finds and concludes as follows:

State Capital is a publicly held corporation, basically controlled either directly or indirectly by Mr. Bergelson. Its publicly held ownership interest is held by purchasers of common stock. In addition, it also has a bonded indebtedness secured by a mortgage encumbering properties of some of its affiliates of some of the Debtors involved in any bankruptcy case and some are not.

Prior to the commencement of these cases, State Capital was the primary and the only arm of this corporate conglomerate which solicited investments from the public at large. Under this investment program it promised to the investors an eighteen percent per annum return on their investment which investment was supposed to have been secured by a so-called equal-dignity mortgages encumbering several real properties located in the State of Florida. Most, if not all, of these properties when purchased by one of these Debtors or by one of their subsidiaries were all already encumbered by a valid institutional first mortgage and as a general rule, as part of the acquisition the original owners of the property took back a purchase money mortgage, but consented to subordinate their interests and agreed to take a third position securing the unpaid portion of the purchase price. While State Capital, as part of this program, did collect from the public more than $41,000,000, it never had any discernable assets of any consequence. As a result of an injunctive proceeding commenced by the Comptroller, its investment program came to a complete halt and it no longer solicits and obtains any funds from the public. It no longer maintains a place of business; it has no employees; it does not sell anything nor does it render any service to anyone.

Florida Consolidated Equities Corp. (FCEC), also a Debtor, is a lessee of the corporate headquarters located in Boca Raton, Florida. The premises have been occupied by all of the other entities involved in these cases, albeit wholly on an informal basis, i.e. without a formal sublease. The lease in question includes an option to purchase the subject property. The Debtor filed a timely Motion to assume that lease. The right of FCEC to assume this lease was challenged by the landlord who contended that the lease is no longer assumable as a matter of law. While the original request of FCED to extend the time to assume the lease was granted, it failed to obtain authorization to assume within the time fixed and its second request for further extension was denied and this Court and this Court determined that the lease

expired by its own terms, therefore, pursuant to § 365(d)(4) of the Code, as amended by the Bankruptcy Amendment and Federal Judgeship Act of 1984 (BAFJA), it is deemed to have been rejected and thus no longer assumable.

The FCEC, just like State Capital, has no assets of any significance with the possible exception of some office furniture. Just like State Capital, it has no employees; it does not conduct any business of any kind. It is clearly no longer a viable economic entity.

First Continental Realty, Inc. (FCRI), another Debtor, was a real estate agency which was supposed to have functioned as a procuring agent for the various acquisitions by the several affiliates of State Capital. For this so-called service, FCRI collected a commission on each transaction. It is equally defunct, no longer maintains any place of business, has no employees and has no visible assets of any sort of any kind.

This leaves for consideration the remaining Debtors made up of the following entities: Berkley-Multi-Units, Inc. (Berkley); Multi-National Motel Management, Inc. (MNMM) and GreenAcres Country Day School, Inc. (GreenAcres).

Berkley is the parent of two corporations known as Standard Bearing and Parts and BOOI Services, Inc. and Resort Condo-Motel, Inc., respectively. As noted, these corporations are wholly owned subsidiaries of Berkley and each owns and operates a motel facility. Some of the investors jointly hold a mortgage junior to existing first mortgages on these properties. Berkley also owns 36 separate properties directly, the majority of them improved and being currently operated as motels.

MNMM is a wholly owned subsidiary of Berkley Industries, Inc., a non-debtor, controlled by the Bergelson family. MNMM, in turn, owns all the outstanding shares in a corporation known as P. Jodana, Inc. and Sunny Beach Motel, Inc. Both these debtor corporations own a motel facility with funds obtained by State Capital from the investors. These properties, just like the others, when purchased were already subject to a first mortgage and, in most instances as noted earlier, also by a third mortgage representing a purchase money mortgage held by the original owners of the particular property who agreed to subordinate this mortgage lien to the mortgage lien of the investor. It should be noted, however, that this proposition is not without dispute and in some instances the second position of the investors is challenged by the holders of the purchase money mortgage. MNMM also owns ten other separate properties directly which again are operated as motel facilities.

GreenAcres is a parent corporation of a corporation known as Pied Piper Learning Center, Inc. which, in turn, owns and operates a day care center. GreenAcres also owns seven properties directly, all of which are operated, with one exception, as day care centers located basically in central Florida. Of course, all of these properties, just like the others discussed earlier, are also encumbered by existing first mortgage and by a second mortgage held by the investors and in most instances, by a third mortgage held by the original owners of the property who, again, by agreement, consented to subordinate their interest to the mortgagees held by the investors.

There is nothing in this record to indicate any inter-connection between these three Debtors or their subsidiaries. There is no evidence that they have any common creditors, with the possible exception that some of the investors who may be co-holders of mortgagees on more than one of the real properties owned by these entities. There is equally nothing in this record and there is no indication by the report of the Examiner that any creditor-debtor relationship ever existed between these Debtors. It seems that the only common thread between these entities was the central and complete control exercised either directly or indirectly by Mr. Bergelson or his family over the affairs of these Debtors.

It is the recommendation of the Examiner that the administration of the estates of

all twelve Debtors should be consolidated and they should be treated as one package for the purpose of reorganization. This approach is supported by the Debtors although they oppose the appointment of a trustee, the State of Florida and by the Securities and Exchange Commission.

This Court cannot accept the soundness of this approach for the following reasons: It is clear that State Capital, FCEC and FCRI are no longer viable economic entities with salvageable values capable of reorganization. Neither is there any evidence in this record to indicate that it would serve any purpose to retain them in a Chapter 11 case because their presence would, in any way, assist the operating Debtors (Berkley, MNMM and GreenAcres) in their efforts to achieve rehabilitation under Chapter 11. Therefore, this Court is satisfied that they are ripe for liquidation and whatever assets they might have, a supposition not very well supported by this record, such asset should be speedily disposed of without further delay by the Trustee appointed for their respective estates.

This is not the case, however, at least not at this time, concerning the estates of Berkley, MNMM and GreenAcres and their subsidiaries. These Debtors own substantial properties; they are currently operating several businesses and they should be given an opportunity to attempt to achieve rehabilitation.

This leads to the consideration of the original Motion filed at the commencement of a case by the Comptroller, a Motion which sought the appointment of a Trustee. The Motion alleges, inter alia, gross mismanagement. Therefore, according to the Comptroller, it is essential to remove the current management and place a trustee in charge of the affairs of these Debtors in order to protect the interest of parties of interest.

■ The Examiner recommended the appointment of a trustee. This recommendation is supported by the SEC. The Debtors, of course, as noted earlier, vigorously resist the Motion and oppose the move and contend that there is no justification in this

record for the appointment of a Trustee. They particularly challenged the relevant findings of the Examiner claiming that they are based on biased and prejudiced fact findings of the staff of the Comptroller and they are derived basically on information furnished to him by the staff of the Comptroller. This Court disagrees with this proposition.

This record is more than adequate to support the finding of gross mismanagement of the affairs by the management prior to the commencement of these cases. The record developed by the Examiner involves multiple unexplained transactions by these Debtors, especially with non-debtor entities also controlled by Mr. Bergelson.

The Examiner's report contains findings that raise serious questions of possible wrongdoings. For instance, the Examiner found an adjusting entry in the general ledger of FCEC in the amount of $4,651,-497 (page 19). The Debtor's books contain no explanation of this entry and the Examiner's requests for explanation and clarification went unanswered. Another adjusting entry for over $600,000 also was never explained. An entry of over $2 million entitled "Due to Bergelson" was never explained. The Examiner found that amounts received by FCEC were reflected as payable to Bergelson when they should have been recorded as payable to owners of properties other than Bergelson. Money belonging to property owners was commingled with other funds and no accounting was ever provided to the owners. Other findings made by the Examiner include the failure of the debtors to (1) maintain adequate books and records; (2) file accurate Statements of Affairs and bi-weekly reports; (3) file federal income tax returns; and (4) institute formal internal accounting controls and effective, responsible management practices.

The Examiner also found thirty-two instances of errors in the Debtors' Statement of Affairs (pages 34-39). A similar conduct was held to be grounds for appointment of a trustee under § 1104(a)(1). *In re Deena Packaging Industries, Inc.*, 29 B.R.

705, 707 (Bankr.S.D.N.Y.1983). The Court felt that the omission "raises questions of dishonest conduct."

It would be naive, indeed, to accept the proposition that any of these Debtors involved would pursue these matters, let alone would undertake any steps to investigate and attempt to recover all transfers which ultimately may be found to be voidable either as preferential transfers or fraudulent transfers.

It has been suggested by the Comptroller that this Court should appoint one Trustee for all the entities which remain in Chapter 11, citing Bankruptcy Rule 2009(a). This Rule does, indeed, authorize the appointment of one single Trustee for several estates. However, the Rule applies only in instances where a joint administration has been ordered by the Court, which is not the case in the present instance.

Based on the foregoing, this Court is satisfied that it is appropriate to order the Chapter 11 administration to proceed under the aegis of separate trustees for the estates of Berkley, MNMM and GreenAcres and their subsidiaries.

A separate order has been entered previously directing State Capital, FCEC and FCRC to be converted to Chapter 7 cases and also a separate order has been entered in accordance with the foregoing appointing trustees for the estates of Berkley, MNMM and GreenAcres. The Estate Administrator has been directed to appoint interim trustees for the estates of the other entities whose administration has been converted into a Chapter 7 case.