INTRODUCTION
 

 ALDON J. ANDERSON, Senior District Judge.
 

 On motion of creditors, The First National Bank and Trust Company of Oklahoma City and Continental Illinois National Bank and Trust Company of Chicago, the Bankruptcy Court appointed a trustee to manage the debtor, Oklahoma Refining Company. The order was entered pursuant to 11 U.S.C. § 1104(a), which provides for appointment of a trustee for cause, including fraud, dishonesty, incompetence or gross mismanagement, or if such appointment is in the interest of creditors. The District Court for the Western District of Oklahoma affirmed the appointment and debtor now appeals to this court, claiming that the appointment was contrary to a court-approved agreement of the parties.
 

 FACTS
 

 On September 14, 1984, debtor filed a voluntary petition for Chapter 11 relief. On September 19, the Bankruptcy Court denied debtor’s request to use the lenders’ cash collateral, but on September 28, the parties and the court approved an agreement for such an arrangement. The provisions of the agreement relevant to this appeal are the following:
 

 1. The Debtor is hereby authorized until further order of the court to use for a period contemplated by the parties hereto as not greater than twelve (12) months from the date of this order such Prepetition Lender Collateral as is necessary in order to pay the reasonable and agreed to items contained in the budget which is attached hereto....
 

 3. ... The Debtor is authorized and directed to grant to the Lenders ... a valid and duly perfected security interest ... subject and subordinate only to such security interests, mortgages and liens in and upon such property as were valid ... and which are not subject to avoidance pursuant to applicable law by the Debtor and any successor in interest to the Debt- or, including, but not limited to, a subsequently appointed trustee in this case. 8. ... The security interests and mortgage liens granted by the Debtor in the Proposed Lender Collateral are hereby deemed granted and perfected ... with such grant and perfection binding the Debtor, any successor in interest to the Debtor, including, without limitation, any subsequently appointed trustee in this case ...
 

 9. The terms and provisions of this Order shall be binding upon and inure to the benefit of the Debtor and each of the Lenders and their respective successors and assigns, including, but not limited to, any trustee appointed in this case and in any superseding case under Chapter 7 of the Bankruptcy Code.
 

 10. The Debtor or First National and Continental may at any time, upon notice to the other parties hereto, move this Court to terminate or modify this Order. Further, this Order shall not prejudice or limit the right of First National or Continental to request or seek other or additional protection or relief with respect to [their collateral or the postpetition loans made by the Lenders].
 

 11. ... If this Order is hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacation shall not affect the validity of any obligations of the Debtor to the Lenders incurred pursuant to this Order prior to the effective
 
 *1135
 
 date of such stay, modification or vacation. ...
 

 13. Unless otherwise agreed among the parties or otherwise ordered by the Court, the stay in effect in this proceeding shall be lifted on September 28,1985.
 

 In general terms, the agreement provided that the cash collateral arrangement was not to last more than twelve months and that debtor was to shut down and mothball its refineries. In January 1985, lenders requested that the court appoint a trustee to manage the company, claiming that it had recently learned that the debtor had been involved in certain questionable transactions both before and after it had filed its petition for relief. Specifically, they claimed that there had been a dramatic increase in sales to debtor’s affiliated companies as a percentage of total sales, that far more volume discounts had been given to the affiliated companies than to others, and that accounts receivable from the affiliated companies had risen from under $100,000 just before the petition was filed to over $4.1 million on January 16, 1985. (Appellees’ Brief to the District Court, pp. 5-6.) Moreover, lenders claimed that debt- or was making no effort to collect the money owed by the affiliated companies. (Id., pp. 5-6.) Lenders also claimed that debtor deposited over $800,000 of proceeds from the sale of inventory into a New Mexico bank account rather than into the lenders’ banks in order to prevent lenders’ offsetting those funds. (Id., p. 7.) Lenders alleged that debtor was not adequately mothballing one of its refineries. (Id., p. 6.) They also claimed that debtor artificially inflated the price of its fuel so that its inventory would not be depleted and it would have ample fuel to sell to the affiliated companies on credit. (Id., p. 6.) Lenders finally complained that debtor had not filed timely and complete monthly reports as required by law. (Id., p. 15.) While the Bankruptcy Court did not agree precisely with lenders’ dollar figures in its Findings of Fact, it did find that the above allegations were supported by the facts.
 
 [1]
 
 It further concluded that cause existed for the appointment of a trustee, and that such appointment would be in the interest of the creditors, equity security holders, and other interests of the estate. (Bankruptcy Court Opinion, p. 5.)
 

 On appeal, the District Court ruled that the Bankruptcy Court’s findings were not clearly erroneous, specifically citing its findings that debtor was making no serious effort to collect the debt from the affiliated companies and that debtor was in the awkward position of having to decide whether or not to sue itself. (District Court Opinion, p. 2.)
 

 Debtor now appears before this court arguing that the agreement of September 28, 1984 provided that debtor was to remain in possession of the company for nine to twelve months and that the matter of concern is not the creditors’ interests, but only whether debtor violated the terms of the agreement, (Appellant’s Brief to the Circuit, pp. 8-9.) Debtor insists that it met in full all of its obligations under the agreement. (Appellant’s Brief, pp. 10-15.) Debtor also argues that the company is not in operation and therefore there is nothing for a trustee to manage. (Appellant’s Brief, pp. 15-19.)
 

 This court agrees with the Bankruptcy Court that there is nothing in the cash collateral agreement to prevent the court from setting aside the agreement or to preclude the operation of § 1104. Paragraphs 1, 3, 8, 9,10,11 and 13 contemplate modification of the agreement and paragraph 9 expressly contemplates the appointment of a trustee. Debtor claims that the parties agreed that it was to remain the debtor in possession for at least nine months. All the agreement says on this point, however, is that “[t]he Debtor is hereby authorized until further order of the court to use for a period contemplated by the parties hereto as not greater than twelve (12) months ... such Prepetition
 
 *1136
 
 Lender Collateral as is necessary in order to pay the ... items contained in the budget which is attached hereto....” (Order Authorizing Debtor to Use Cash Collateral, para. 1.)
 

 As to debtor’s argument that no trustee is needed because the company is not in operation, lenders’ argue that substantial amounts of money are being spent each month to keep the refineries in a holding position, accounts receivable are being collected, inventory is being sold, there are negotiations to sell the refineries, environmental problems have to be managed, monthly reports have to be prepared, and certain decisions have to be made as to whether or not to sue. Clearly a trustee would be helpful in protecting the lenders’ positions.
 

 Finally, debtor argues that there is no cause for the appointment of a trustee. 11 U.S.C. § 1104(a) reads:
 

 a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—
 

 (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
 

 (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.
 

 It is clear, both from the language of the statute and established case law, that the court need not find any of the enumerated wrongs in order to find cause for appointing a trustee.
 
 In re William H. Vaughn & Co., Inc.,
 
 40 B.R. 524 (Bankr.E.D.Pa. 1984). It is sufficient that the appointment be in the interest of creditors.
 

 There are many cases holding that a history of transactions with companies affiliated with the debtor company is sufficient cause for the appointment of a trustee where the best interests of the creditors require.
 
 In the Matter of State Capital Corp.,
 
 51 B.R. 400 (Bankr.M.D.Fla.1985);
 
 In re Humphreys Pest Control Franchises, Inc.,
 
 40 B.R. 174 (Bankr.E.D.Pa.1984);
 
 In re Concord Coal Corp.,
 
 11 B.R. 552 (Bankr.S.D.W.Va.1981);
 
 In re Main Line Motors, Inc.,
 
 9 B.R. 782 (Bankr.E.D.Pa. 1981);
 
 In re L.S. Good & Co.,
 
 8 B.R. 315 (Bankr.N.D.W.Va.1980).
 

 It is also established that failure to keep adequate records and make prompt and complete reports justifies the appointment of a trustee.
 
 State Capital,
 
 51 B.R. at 403;
 
 Humphreys Pest Control,
 
 40 B.R. at 177,
 
 In re Ford,
 
 36 B.R. 501, 504 (Bankr.W. D.Ky.1983).
 
 [2]
 

 This court’s authority is limited to determining if the Bankruptcy Court’s determination was clearly erroneous.
 
 In re Brown,
 
 31 B.R. 583 (Bankr.D.D.C.1983). The Bankruptcy Court’s finding that a trustee is in the best interest of the creditors appears to be well-grounded in fact and is not clearly erroneous.
 

 Once the court has found that cause exists under § 1104, it has no discretion but must appoint a trustee.
 
 Ford,
 
 36 B.R. at 504;
 
 In re Bonded Mailings,
 
 20 B.R. 781, 786 (Bankr.E.D.N.Y.1982).
 

 Debtor has also argued that the Bankruptcy Court should not have considered prepetition conduct because such activity is not relevant to the appointment of a trustee. The court in
 
 In re Main Line Motors,
 
 9 B.R. at 784, however, clearly held that prepetition activity may be considered as part of a § 1104 determination.
 

 In conclusion, the court feels that the Bankruptcy Court’s appointment of a trustee was supported by the facts and was not in any way contrary to the law. The deci
 
 *1137
 
 sion of the District Court is, therefore, AFFIRMED.
 

 [1]
 

 . The court found that the accounts receivable from the affiliated companies just before the filing of the petition actually amounted to $2.1 million, that the debt accumulated after the petition was filed was only $1.2 million, and that the amount transferred to the New Mexico bank account was actually $687,000. (Opinion of the Bankruptcy Court, pp. 1, 3.)
 

 [2]
 

 . Case law also supports lenders’ claims that debtor’s effort to manage the company was impeded by the existence of at least four criminal cases pending against either the debtor's president, Ray Bell, or some of the affiliated companies.