**In re CELERITAS TECHNOLOGIES, LLC, and, CeleritasWorks, LLC, Debtors.**

No. 10–22381.

United States Bankruptcy Court, D. Kansas.

March 14, 2011.

**516**

Eric L. Johnson, Lisa Epps Dade, Scott J. Goldstein, Spencer Fane Britt & Browne LLP, Kansas City, MO, for Debtors.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO APPOINT CHAPTER 11 TRUSTEE

ROBERT D. BERGER, Bankruptcy Judge.

Judgment Creditor The Paradigm Alliance, Inc., filed the Motion to Appoint Chapter 11 Trustee. After discovery, the matter was tried over two days. The issue is whether cause exists or it is in the interests of creditors, equity security holders, and the bankruptcy estate to appoint a Chapter 11 trustee. Based on the evidence, applicable authorities, and the following findings of fact and conclusions of law, the Court finds it appropriate to appoint a Chapter 11 Trustee with limited powers to oversee Debtors' financial management and litigation.

### Findings of Fact

Debtors CeleritasWorks, LLC, and Celeritas Technologies, LLC (collectively, "Debtors"), were founded in 1994 and have approximately 50 employees. Celeritas Technologies provides computer or information technology related services. CeleritasWorks develops and licenses proprietary software and acts as server host for data storage. Debtors are owned by two, separate corporations, which, in turn, are owned by Perseverance Holding Corp. Debtors' current CEO, Brett Lester, is the sole shareholder, director, and officer of Perseverance. Lester has worked for Debtors at least 13 years. He has directed Debtors' operations for the last 10 years. Lester obtained Debtors' owner-ship interest on July 2, 2010, shortly before the companies filed bankruptcy. Before Lester, Debtors were owned by their prior CEO, Rob Cossins, and his business partner, Terry Campbell. Cossins estimated the companies to be worth between $7.5 million to $15 million in 2010.

Debtors filed their Chapter 11 petitions on July 13, 2010, along with emergency motions to sell their assets and establish bidding and auction procedures. Debtors entered bankruptcy with pre-negotiated asset purchase agreements with two entities controlled by Donald Davis. Lester advised customers Debtors were being sold to Davis entities for "financial stability" reasons. Paradigm objected to the sale because it alleged Debtors were financially strong and did not offer a credible reason for a rushed sale. The proposed sale included selling all estate assets in exchange for $750,000 in cash and $3,750,000 in promissory notes. Debtors' liabilities would attach post-sale to the relatively small amount of cash and the promissory notes. Lester, an insider, was to receive a 35% equity interest in the purchasing entities. The proposed sale was abandoned after Debtors could not or would not produce Cossins and Campbell for discovery prior to or at the auction procedures hearing.[1] Paradigm subsequently alleged Cossins and Campbell received a "back-end deal" in selling Debtors to Perseverance. Cossins and Campbell received less than $2,000 for Debtors in exchange for the right to receive 40% of Debtors' future net income derived from liquidation, dividends, or stock resale. The resale to Davis in bankruptcy was contemplated at the same time the Perseverance sale was negotiated with Cossins

---

1. Paradigm requested depositions prior to the hearing; however, the Court suggested the parties examine the witnesses at the hearing to save time and money. The day of the hearing, the witnesses did not appear, and the Court postponed the hearing.

and Campbell. Lester was involved in both agreements and stood to personally gain financially.

The conflict between Debtors and Paradigm is acrimonious, long-standing, and personal. Paradigm is in the business of assisting pipeline companies to fulfill their regulatory obligations. In 2003, Debtors and Paradigm met and formed a joint venture to develop and sell software to pipeline companies. By 2005, the relationship deteriorated, and the parties parted ways. However, each party continued to develop its own marketable product. Eventually, the parties became aware of one another's competing products which gave rise to litigation. Paradigm filed suit in 2007. Paradigm prevailed at trial and proved that while the parties were joint venture partners, Debtors secretly undertook to patent for themselves the parties' jointly developed software product. Paradigm also proved Debtors intentionally used Paradigm's trade secrets without permission in the preparation and prosecution of the secret patent applications. The patent applications at issue in the underlying litigation recently resulted in an issued patent. Debtors now arguably may bring infringement suits, most likely against Paradigm.[2] Debtors were also found liable for attempting to break into Paradigm's computer systems in violation of the federal Computer Fraud and Abuse Act. Lester personally ordered an employee to attempt to break into Paradigm's system. On December 14, 2009, after more than two years of bitter and costly litigation, Paradigm obtained a judgment against Debtors in the amount of $1,107,240 and punitive damages in the amount of $1,562,420, plus post-judgment interest. On January 25, 2011, after obtaining stay relief, Paradigm obtained a ruling granting it attorney's fees.[3] Debtors have appealed the judgment but did not file an appeal bond to stay execution.

Debtors allege Paradigm's judgment necessitated their bankruptcy filings. However, Debtors have been profitable and increased their profitability while in bankruptcy. On June 30, 2010, Debtors reported $160,124 in net income. Debtors continued to rely on that number until trial when it was shown Debtors had actual net income of $805,588 as of December 2010. Despite Debtors' professed fears a prolonged bankruptcy would cost them key employees, Debtors have lost only one management level employee who testified he left for a better position and not because of Debtors' bankruptcy. Debtors' customer base has remained steady.

Debtors' ongoing conflict with Paradigm is the crux of this bankruptcy and the reason Paradigm filed a motion to appoint a trustee. The history of the case, while short, is filled with their ongoing strife. Davis's early involvement in the proposed § 363 sale was criticized by Paradigm because he did not offer much capital or industry expertise. Lester, in an email to Cossins, wrote, "Don Davis, slick and east coast though he may be, gives us … [t]he best chance to beat Paradigm." Campbell wanted to contractually obligate Davis to sue Paradigm for patent infringement in order to force Paradigm into a reduced settlement. In September 2010, the parties attempted mediation. Davis participated, and to Paradigm, he appeared the primary speaker for Debtors. The mediation did not reach a resolution. Later,

---

**2.** The parties either have or will take up those issues with the United States Trademark and Patent Office.

**3.** The amount has not yet been determined, but it will be a significant award. Debtors scheduled their own counsel, Lathrop & Gage, L.C., as owed $1,200,000 as a result of the Paradigm litigation.

Davis told Paradigm he intended to purchase Perseverance, instead. The proposed sale did not occur, in part, because of Paradigm's protests. Debtors next proposed a reorganization plan which provided Davis-controlled entities would acquire 60% interest in Debtors for $500,000. Debtors have abandoned that plan, and Davis has apparently withdrawn his presence from the bankruptcy case.

Lester remains in control of Debtors and will remain so under the amended reorganization plan. Lester has testified regarding his personal hatred for Paradigm. Under oath, Lester stated, "Is there a part of me that says I would love to break this off in Paradigm? You bet."

Debtors' reticence for full disclosure, their failure to cooperate in providing discovery, and their stated animosity toward Paradigm are some of many concerns Paradigm has regarding Debtors' fiduciary duties in bankruptcy.

### Conclusions of Law

■ Section 1104(a) of the Code provides two alternative grounds for appointing a trustee:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause . . .; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate. . . .

The decision whether the facts establish cause under § 1104(a)(1) is vested in the court's discretion and will be reviewed under an abuse of discretion standard.[4] The court is vested with even broader discretionary powers under § 1104(a)(2) and may consider equitable factors to determine whether a trustee is in the interests of the estate and its creditors.[5] If the facts of the case support the appointment of a trustee under either subsection §§ 1104(a)(1) or (2), the court has no discretion, but must appoint a trustee.[6] The appointment of a Chapter 11 trustee is an extraordinary remedy based on a strong presumption in favor of leaving the debtor in possession. "Nevertheless in the appropriate case, the appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served."[7] The appointment of a Chapter 11 trustee should better serve creditors, shareholders, and the public interest by promoting efficiency, effectiveness and transparency, traits which may have been lost by current management.

Paradigm raises an issue with the appropriate burden of proof it must carry to prevail. The majority of courts cite a

**4.** *In re Nartron Corp.,* 330 B.R. 573, 592 (Bankr.W.D.Mich.2005); *In re Sundale, Ltd.,* 400 B.R. 890, 900 (Bankr.S.D.Fla.2009); *In the Matter of Intercat, Inc.,* 247 B.R. 911, 920 (Bankr.S.D.Ga.2000).

**5.** *In re V. Savino Oil & Heating Co., Inc.,* 99 B.R. 518, 525 (Bankr.E.D.N.Y.1989).

**6.** *Oklahoma Refining Co. v. Blaik (In re Oklahoma Refining Co.),* 838 F.2d 1133, 1136 (10th Cir.1988).

**7.** *In the Matter of Intercat, Inc.,* 247 B.R. at 920.

clear and convincing burden.[8] However, while these citations are in the majority, they have little support in the language of the Code or in legislative history. The Tenth Circuit has not adopted the standard.[9] At least one reviewing court, with more analysis, has rejected the clear and convincing burden in favor of the preponderance of the evidence burden.[10] *Tradex* found a reflexive endorsement of a more demanding clear and convincing burden to appoint a trustee anomalous to Supreme Court precedent, specifically relying on *Grogan v. Garner.*[11] *Grogan* found a creditor seeking to except its debt from discharge for false pretenses and fraud need do so by the preponderance of the evidence. *Grogan* noted most states have adopted the higher standard for fraud claims by common law. However, the Supreme Court found no similar adoption by Congress and refused to apply the higher standard without a statutory directive. The Court concluded the absence of statutory language or legislative history requiring a heightened standard of proof presumes the usual preponderance of the evidence standard applies in civil cases between private litigants unless an important individual interest or right is at stake.[12] Cases involving an important individual right to which the clear and convincing burden has been applied include involuntary commitment, termination of parental rights, deportation or denaturalization.[13] *Tradex* found no individual right at stake in a motion to appoint a trustee.[14]

Paradigm raises a legitimate point; however, this particular case does not recommend itself to a departure from the majority view in favor of a lesser standard of proof. In practice, the appoint of a Chapter 11 trustee is not a close call. Since *Tradex*, cases noting the split in authority find even if they adopted the lower burden, the movants had met the higher burden.[15] The same is true in this case.

## A. Cause Exists to Appoint a Chapter 11 Trustee.

■ Paradigm has proven with clear and convincing evidence Debtors can not objectively address their debt to Paradigm in bankruptcy without the assistance of a disinterested trustee. Acrimony between debtor and creditor which impedes the reorganization effort is cause to appoint a Chapter 11 trustee.[16] In this regard, *Nar-*

8. *See, e.g., In re G–I Holdings, Inc.,* 385 F.3d 313, 318–19 (3d Cir.2004).

9. *In re Plaza de Retiro, Inc.,* 417 B.R. 632, 640 n. 8 (Bankr.D.N.M.2009).

10. *Tradex Corp. v. Morse,* 339 B.R. 823 (D.Mass.2006) (Noting the abuse of discretion standard requires the reviewing court to conclude no reasonable person could have interpreted the evidence as the trial court. The standard of review on appeal belies a heightened evidentiary burden at trial.)

11. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *see also Herman & MacLean v. Huddleston,* 459 U.S. 375, 388, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (securities fraud claims are subject to prepon-

derance of the evidence standard and not clear and convincing standard).

12. *Grogan v. Garner,* 498 U.S. at 286, 111 S.Ct. 654.

13. *Herman & MacLean v. Huddleston,* 459 U.S. at 389–90, 103 S.Ct. 683.

14. *In re Tradex,* 339 B.R. at 830.

15. *See, e.g., In the Matter of Intercat,* 247 B.R. at 923 n. 4; *In re Plaza de Retiro, Inc.,* 417 B.R. at 640 n. 8; *In re Veblen West Dairy LLP,* 434 B.R. 550, 553 (Bankr.D.S.D.2010).

16. *In re Nartron Corp.,* 330 B.R. at 590 (*citing In re Marvel Entertainment Group, Inc.,* 140 F.3d 463 (3d Cir.1998)); *In re Plaza de Retiro,* 417 B.R. at 640–41.

*tron* is particularly instructive and on point. Nartron was a successful automobile accessory business. It filed bankruptcy, not because it was insolvent, but as a litigation tactic. The principal of Nartron was so blinded by years of underlying lawsuits, he could not fulfill his fiduciary duties in bankruptcy. Specifically, he could not objectively handle the ongoing litigation and comply with his duties of disclosure and transparency while his company continued to enjoy the protection of the automatic stay. The court found any costs associated with appointing a trustee would be offset by the litigation costs Nartron continued to accrue post-petition. As in this case, Nartron management was found to be either unwilling or incapable of making the transition from zealous litigant to fiduciary in bankruptcy. However, because Nartron management was notably talented and profitably running the business, the appointed trustee's powers were limited to overseeing financial disclosure requirements and objectively managing the debtor's litigation.

Paradigm has proven Debtors are improperly attempting to use bankruptcy to keep their assets and evade their debt to Paradigm. Davis's involvement in the "emergency" § 363 sale, the proposed purchase of Debtors' holding company, and the first reorganization plan have been proven ruses. Debtors withdrew all three proposals before the Court could scrutinize them. Paradigm's concerns were well-founded. Davis did not offer needed capital or business expertise. Debtors did not face dire consequences if an expedited bankruptcy sale failed to close. Davis offered nothing, which is proven by the fact he is gone. After three aborted attempts, Debtors have damaged the confidence of the Court and their creditors in Debtors' ability to abruptly change tactics and deal with the Paradigm debt with good business judgment as opposed to personal animosity. As in *Nartron*, if Debtors did not want anyone involved in their decisions, they should have filed an appeal bond and not sought refuge in bankruptcy. After seeking the benefit of the automatic stay, Debtors became subject to judicial scrutiny, a fact Debtors seem resistant to accept.

## B. The Best Interests of Creditors Require the Appointment of a Trustee.

Bankruptcy courts consider a variety of factors to evaluate whether a trustee is needed under § 1104(a)(2) to manage the debtor's affairs.[17] As with the analysis of cause under § 1104(a)(1), the debtor's ability to fulfill its duty of care to protect the assets, its duty of loyalty, and its duty of impartiality is at the base.[18] Perceived dishonesty or the withholding of information supports the appointment of a trustee.[19] "One of the most fundamental and crucial duties of a debtor-in-possession upon the filing of a Chapter 11 petition is to keep the Court and creditors informed about the nature, status and condition of the business undergoing reorganization."[20] Other factors may include (i) the overall management of debtor, both past and present, (ii) the trustworthiness of debtor's

---

17. *In re Nartron Corp.*, 330 B.R. at 592; *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr.S.D.N.Y.1990).

18. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985); *Smart World Techs., LLC, v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 175 (2d

Cir.2005); *In re Bowman*, 181 B.R. 836, 843 (Bankr.D.Md.1995).

19. *See, e.g., In re Plaza de Retiro, Inc.*, 417 B.R. at 641; *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. at 526.

20. *Id.*

management, (iii) the confidence or lack thereof of the business community and of creditors in present management, and (iv) practical considerations, such as the benefits derived by the appoint of a trustee, balanced against costs.[21]

██ What Debtors describe as "run-of-the-mill" discovery disputes, Paradigm has proven are dereliction of fiduciary duties. For example, producing illegible ledgers, failing to disclose material information regarding improved finances, and failing to provide candid and accurate information about Debtors' profitability are breaches of duty. Debtors failed to provide accurate information about their ownership, the recent pre-petition change in ownership, and the terms of the transactions. The history of this case proves the information will be disclosed. Why Debtors believe disclosure must first be fought as a discovery dispute demonstrates Debtors' endemic lack of judgment when it comes to dealing with Paradigm. To this point, Paradigm has acted as the overseer of Debtors' fiduciary responsibilities at considerable expense. The status quo is not working for either party or other creditors. The appointment of a disinterested trustee is in the best interest of the estate and its creditors.

### C. Appointing a Trustee with Limited Powers.

██ Section 1107 gives the debtor-in-possession certain rights and powers "subject to ... such limitations or conditions as the court prescribes...." Similarly, § 1108 provides "[u]nless the court ... orders otherwise, the trustee may operate the debtor's business." Both sections grant broad authority to assign duties to a debtor-in-possession or a trustee if one is appointed. As in *Nartron*, the circumstances of this case call for an independent trustee with limited powers. The appointed Trustee shall oversee financial management and disclosure requirements of Debtors; monitor expenditures of estate assets; investigate and prosecute estate causes of action; mediate and address Paradigm's and Lathrop and Gage's claims in a reasonable and efficient manner; and oversee the approval of the Disclosure Statement and confirmation of a Plan of Reorganization.

Debtors' current management has proven it has operational expertise and success in keeping the companies profitable. Current management may remain in control of business operations, including product development and sales.

The United States Trustee shall appoint a Chapter 11 Trustee with specific but limited powers as outlined. Lester and his management team may continue to serve in their operational roles and shall report on a regular and timely basis to the Trustee in the manner directed by the Trustee. Any dispute over clarification of this Order shall be resolved by stipulation between the Chapter 11 Trustee and the Lester management team when possible or by further order of the Court upon request.

IT IS SO ORDERED.

---

21. *In re Ionosphere Clubs, Inc.,* 113 B.R. at 168.