**In re L. S. GOOD & CO. et al, Debtors.**

**In re J. W. KNAPP COMPANY.**

**Bankruptcy No. 80–00253–W.**

United States Bankruptcy Court,
N. D. West Virginia.

Nov. 10, 1980.

Howard L. Sokolsky, Cleveland, Ohio, for debtor in No. 80–00253–W.

John J. Dilenschneider and Gordon Johnston, Porter, Wright, Morris & Arthur, Columbus, Ohio, for Creditors' Committee in No. 80–00253–W.

Charles J. Kaiser, Jr., Phillips, Gardill, Hazlett & Kaiser, Wheeling, W. Va., for Wheeling Dollar Savings & Trust Co. in No. 80- 00253· W.

### MEMORANDUM OPINION

#### I

JOHN H. KAMLOWSKY, Bankruptcy Judge.

J. W. Knapp Company, a corporation, (hereinafter called Knapp) filed a voluntary

Chapter 11 petition in this District May 27, 1980. On September 17, 1980 the unsecured Creditors' Committee filed its MOTION FOR APPOINTMENT OF TRUSTEE. Hearing was had on the motion October 16, 1980 at Wheeling and the matter was taken under advisement by the Court. Now having fully considered the testimony, the exhibits presented and the arguments of counsel, I find the facts to be as follows:

1. As of May 27, 1980, the date of the filing of the voluntary Chapter 11 petition by Knapp, Knapp operated four (4) retail department stores in the State of Michigan. Knapp is the parent corporation of The D. M. Christian Company, a corporation, L. W. Robinson Company, a corporation, and Smith, Bridgman & Company, a corporation. These three subsidiaries of Knapp also filed voluntary Chapter 11 petitions in this District May 27, 1980 and as of May 27, 1980, the three subsidiaries also operated retail department stores in the State of Michigan.

2. Knapp is a subsidiary of L. S. Good & Co., a corporation, and L. S. Good & Co. also filed a voluntary Chapter 11 petition in this District May 27, 1980.

3. On October 16, 1980, this Court entered two (2) orders closing the retail department stores then operated by Knapp, The D. M. Christian Company, L. W. Robinson Company and Smith, Bridgman & Company for the reasons that the retail department stores were suffering substantial losses in their daily operations and the debtors-in-possession were without sufficient funds to finance their daily operations.

4. On October 23, 1980 after notice and a hearing, this Court converted The D. M. Christian Company from a case under Chapter 11 to a case under Chapter 7.

5. On October 30, 1980 this Court entered orders, after notice and hearings, converting L. W. Robinson Company and Smith, Bridgman & Company from cases under Chapter 11 to cases under Chapter 7.

6. In the Knapp proceeding, an officer of L. S. Good & Co. testified that Knapp incurred losses for the months indicated as follows:

| | |
|---|---|
| May, 1980 | ($388,677.00) |
| June, 1980 | ($221,960.00) |
| July, 1980 | ($620,908.00) |
| August, 1980 | ($450,964.00) |

7. An officer of L. S. Good & Co. further testified that as of May 26, 1980 the inventory of Knapp had a cost value of $4,815,-416.00. As of October 3, 1980 the cost value of the inventory was $2,263,700.00.

8. For the months of May, June, July and August, 1980 Knapp had gross retail sales of $5,201,788.00. For the same period in 1979 Knapp's gross retail sales totaled $8,787,783.00.

9. An officer of L. S. Good & Co. further testified that the estimated gross retail sales for Knapp in September, 1980 were $739,300.00. In September, 1979 Knapp's gross retail sales totaled $1,926,200.00.

10. For the period October 1 through October 14, 1980 Knapp had estimated gross retail sales of $370,600.00. For the identical period in 1979 Knapp's gross retail sales were $1,241,100.00.

11. As of October 14, 1980 Knapp had $734,000.00 cash on hand of which sum $355,000.00 was set aside to pay for incoming inventory.

12. Richard Follette, a partner in the accounting firm of Ernst & Whinney employed by the unsecured Creditors' Committee, testified that he is of the opinion that fresh cash in the sum of five million dollars must be forthcoming for a successful rehabilitation of Knapp. This opinion was based on inventory levels necessary to turn Knapp into a profitable operation. No parties in interest, including the debtor-in-possession, are aware of any sources from which Knapp may borrow the five million dollars.

13. In June, 1980 Knapp paid the sum of $56,825.70 to L. S. Good & Co., its parent, for management fees. In August, 1980 Knapp paid approximately $86,300.00 to L. S. Good & Co. for management fees. Management fees have been defined as Knapp's share of the administrative expenses of its pending Chapter 11 proceeding, Knapp's

share of management salaries, insurance coverage for the Knapp assets and personnel management expenses for expenses incurred by management for services rendered on behalf of Knapp.

14. On May 27, 1980 The William F. Gable Company, a corporation, Fowler, Dick & Walker, Inc., a corporation, Good's Department Stores, Inc., a corporation, and Kann Corporation, each a subsidiary of L. S. Good & Co., a corporation, also filed voluntary Chapter 11 petitions in this District. Good Credit Corporation, also a subsidiary of L. S. Good & Co., filed its voluntary Chapter 11 petition in this District July 28, 1980.

15. The Court takes judicial notice of the testimony of Sidney S. Good, Jr., Chairman of the Board of L. S. Good & Co., a debtor-in-possession and parent of Knapp, in previous proceedings concerning these matters that during the prepetition operation of the various debtors-in-possession, at least one million inter-company transfers occurred.

## II

The motion of the unsecured Creditors' Committee for the appointment of a trustee in the Chapter 11 reorganization proceeding is made pursuant to 11 U.S.C. § 1104 which provides, *inter alia*,

"(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of

holders of securities of the debtor or the amount of assets or liabilities of the debtor . . ."

■ In resolving the question presented, I am of the opinion and do find that the motion should not be granted under the provisions of 11 U.S.C. § 1104(a)(1) for the record before me is devoid of clear and convincing proof that the current management of Knapp is guilty of fraud, dishonesty, incompetence or gross mismanagement.

The issue then arises as to whether the motion should be granted under the provisions of 11 U.S.C. § 1104(a)(2) which sets forth, *inter alia*, that the court shall order the appointment of a trustee if such appointment is in the interests of creditors, any equity security holders and other interests of the estate.

Counsel for the debtor argues that the appointment of a trustee will adversely affect all of the related debtor corporations and frustrate the purpose and effect of a plan of reorganization.

■ The authorities are in agreement that the appointment of a trustee in a Chapter 11 case is an extraordinary remedy, and one which may impose a substantial financial burden on a hard-pressed debtor seeking relief under the Bankruptcy Code. *In re Hotel Assocs., Inc.,* 3 B.R. 343 (Bkrtcy. E.D.Pa.1980). Under 11 U.S.C. § 1104(a)(2), the Bankruptcy Court may utilize its broad equity powers to engage in a cost-benefit analysis in order to determine whether the appointment of a trustee would be in the interest of creditors, equity security holders and other interests of the estate. *In re Hotel Assocs., Inc., supra.*

■ The uncontroverted evidence before me is that Knapp was suffering substantial operating losses prior to its closing, the inventory was being rapidly depleted and Knapp has no sources from which to borrow needed capital to purchase new inventory. At the present time, Knapp is not generating income and the assets are being depleted by the payment of necessary costs and expenses for the preservation of same. The further uncontradicted evidence is that

an infusion of fresh capital in a sum approximating five million dollars is required for Knapp to undergo a successful reorganization. Thus, the present prospects for a successful rehabilitation of the debtor are extremely remote. It must be presumed at this juncture that the debtor, its creditors and equity security holders have no alternative but to liquidate Knapp's assets. The question arises as to whether it would be more economical and beneficial to the creditors and equity security holders for a Chapter 11 trustee, rather than the debtor, to proceed with a liquidating plan. The facts disclose that large sums have been paid to L. S. Good & Co., the parent, for management fees and should the debtor continue to remain in possession, the management fees will continue to accrue monthly. The testimony of the Chairman of the Board of L. S. Good & Co. is that at least one million inter-company transactions have taken place. There is the strong probability that Knapp possesses claims adverse to the interests of the parent and the other subsidiaries. The magnitude of the number of inter-company transactions places current management of Knapp in a position of having grave potential conflicts of interest and the presumption arises that the current management of Knapp will be unable to make the impartial investigations and decisions demanded in evaluating and pursuing inter-company claims on behalf of Knapp.

I am of the opinion and do find (a) that the continuation of current management will result in serious potential conflicts of interest; (b) that it would be more economical, beneficial and advantageous to the creditors and equity security holders to have current management replaced by a Chapter 11 trustee; and (c) that the interests of the creditors and equity security holders would be better served by the appointment of an experienced and independent Chapter 11 trustee, whose sole motivation will be to realize the maximum amount of monies possible from a liquidation of Knapp's assets including the collection of any and all monies due and owing Knapp from all sources. The motion of the unsecured Creditors' Committee for the appoint-

ment of a Chapter 11 trustee is, therefore, granted. It is accordingly

SO ORDERED.