**In re MAIN LINE MOTORS, INC. t/a George Ruggiere Ford, Debtor.**

**Application of AMERICAN BANK AND TRUST COMPANY OF PENNSYLVANIA.**

**Bankruptcy No. 80–01731K.**

United States Bankruptcy Court, E. D. Pennsylvania.

March 10, 1981.

---

Erwin L. Pincus, Jonathan H. Ganz, Philadelphia, Pa., for debtor.

Raymond Pearlstine, Harris F. Goldich, Norristown, Pa., for American Bank and Trust Co. of Pa.

Albert P. Massey, Jr., Paoli, Pa., Trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

Presently before the court is the request of American Bank and Trust Company of Pennsylvania ("American Bank") for an order appointing a trustee pursuant to § 1104 of the Bankruptcy Reform Act, 11 U.S.C. § 1104 (1978). The debtor, Main Line Motors, Inc., trading as George Ruggiere Ford ("Main Line") has answered and moves to dismiss the request.

Because American Bank has shown cause for the appointment of a trustee, the relief requested will be granted.

A hearing on the said request was held on October 22, 1980, and the court now makes the following findings of fact and conclusions of law.

American Bank has three (3) claims against the debtor, which are purportedly based on a mortgage on the debtor's premises at 20 West Lancaster Avenue, Devon, Pennsylvania, a capital loan dated June 13, 1979, and a wholesale floor financing plan dated May 26, 1978. Although the precise dollar value of these claims is in dispute, the testimony at the hearing disclosed that American Bank's interest in the debtor corporation is substantial. *See* notes of testimony, pp. 1–12.

In order to protect its interests, American Bank took security interests in much of the debtor's property, including but not limited to motor vehicles, parts inventory, customer and factor receivables, and machinery. The Bank also conducted field audits to determine when and how payment could be expected from Main Line Motors. These audits brought to light the business practices which American Bank asserts are conclusive evidence of the need for a trustee. We agree with the Bank to the extent outlined below.

■ In its request, the Bank advanced numerous potential bases for the appointment of a trustee pursuant to § 1104 of the Bankruptcy Code. The debtor denied each of these allegations. However, the evidence revealed that George Ruggiere, the president and sole shareholder of Main Line, has withdrawn substantial sums from its operations and placed them in the control of two (2) other corporations owned and controlled by Mr. Ruggiere; Sun Coast Rent-A-Car and/or East Coast Chrysler Plymouth, both of which are situated in Florida.[1] The Florida operations are unrelated to the debtor corporation, and the debtor corporation has no interest in them beyond a common president and sole shareholder.

The amount transferred from Main Line to Mr. Ruggiere's Florida operations totalled approximately $309,488.00.[2] Although Mr. Ruggiere avers that this amount was a loan, the obligation is not supported by a written note or other loan agreement, nor are the Florida operations obligated to pay or accrue interest.[3] Moreover, there is no agreement as to when the

1. N. T. at 15, 83, 134.

2. N. T. at 15, 83.

3. N. T. at 141–142.

alleged loan must be repaid.[4] Finally, although the debtor asserts that the transfer of funds took place prior to October of 1979, the financial statements provided to American Bank through April, 1980, do not reflect such a transaction. When the transaction was finally noted in a financial statement dated May 31, 1980, but not released to American Bank until July 8, 1980, it was shown as an amount due from officers and directors, not as an inter-company transaction.[5] The debtor explains that this change in terminology reflected a reclassification of assets, but a comparison of the financial statements dated January 1, 1980 and May 31, 1980, does not support this explanation. On the whole, debtor's financial statements and Mr. Ruggiere's sworn testimony concerning them, are confusing, contradictory, and unconvincing, particularly in light of the fact that the sum of $309,488.00 was transferred interest-free to unrelated corporations during a period which immediately preceded the filing of the instant Chapter 11 bankruptcy petition on July 21, 1980.

Section 1104 of the Bankruptcy Reform Act, 11 U.S.C. § 1104, governs the appointment of a trustee in a chapter 11 case. Section 1104 provides:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holder of securities of the debtor or the amount of assets or liabilities of the debtor.

As this court held in *In re Hotel Associates, Inc.*, 3 B.R. 343, 6 B.C.D. 160 (E.D.Pa.1980), *aff'd*, No. 80–4444 (E.D.Pa. January 30, 1981), a determination as to whether to appoint a trustee compels the court to resort to its broad equity powers, and we noted that in equity "... [c]ourts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests." *Id.*, at 345, relying on *Lemon v. Kurtzman*, 411 U.S. 192, 200–201, 93 S.Ct. 1463, 1469–70, 36 L.Ed.2d 151 (1973). *See also In re Parr*, 1 B.R. 453, 5 B.C.D. 1143 (E.D.N.Y. 1979). These equitable considerations are directly applicable to consideration of an appointment in the interests of creditors under § 1104(a)(2). Under an appointment for "cause" under § 1104(a)(1), the court's discretionary powers are necessarily more circumscribed. *See In re Anchorage Boat Sales, Inc.*, 4 B.R. 635, 6 B.C.D. 495 (E.D.N. Y.1980).

The court must weigh the various considerations and competing interests carefully under either subsection of § 1104, because the appointment of a trustee is an extraordinary remedy. *In re Hotel Associates, Inc., supra.*

In the instant case, we find that the debtor corporation, under the direction of its president and sole shareholder, has evidenced a sufficient degree of incompetence and gross mismanagement within the meaning of § 1104(a)(1) to justify the appointment of a trustee. The transmittal of more than $300,000 out of the debtor corporation, without interest, security, or a written instrument recording the debt, falls far short of any reasonable standard of business management. This commingling of assets occurred under the auspices of the current management of debtor and the fact that the events preceded the bankruptcy petition is not controlling because § 1104(a)(1) embraces activities "either before or after the commencement of the

---

**4.** *Id.*

**5.** N. T. at 112, 113.

case." We also note that the retail market for automobiles is presently in a severe slump nationwide, and nothing in Mr. Ruggiere's testimony convinces us that the transfer of funds was a competent decision, or that the debtor's financial accounting practices have improved or will improve under his direction.

We conclude that it is essential at this time to install an independent trustee in this case, and that the appointment is in the interests of both the debtor corporation and its creditors.

Accordingly, the request of American Bank and Trust Company of Pennsylvania for an order appointing a trustee is granted.