**In re McCORHILL PUBLISHING, INC., Debtor.**

**Bankruptcy No. 87 B 20104.**

United States Bankruptcy Court, S.D. New York.

June 11, 1987.

---

Kissam & Halpin, New York City, Attorneys for Kraus-Thomson Organization Ltd.; Michael F. Fitzgerald, of counsel.

Haight, Gardner, Poor & Havens, New York City, for Intermar Financial Corp.; Eliot H. Lumbard and Tracy Klestadt, of counsel.

Jeffrey L. Sapir, Hartsdale, for debtor.

## DECISION ON MOTION FOR AN ORDER DIRECTING THE APPOINTMENT OF A TRUSTEE, OR IN THE ALTERNATIVE AN EXAMINER, OR CONVERTING CASE FROM ONE UNDER CHAPTER 11 TO CHAPTER 7.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Kraus-Thomson Organization, Limited ("KTO"), the holder of a second mortgage against property owned by McCorhill Publishing, Inc., the debtor in this Chapter 11 case, has moved pursuant to 11 U.S.C. §§ 361, 363, 1104 and 1112(b) for an order,

(a) directing the appointment of a trustee or, in the alternative, an examiner;

(b) providing adequate protection of KTO's security interest, including the turnover to KTO of the collateral which includes inventory, receivables "Kraus" trade names, proceeds and equipment and furnishings, together with an accounting of the collateral previously liquidated by the debtor;

(c) converting the case from Chapter 11 to Chapter 7.

At the hearing on this motion it was ruled that KTO's motion, to the extent it seeks a turnover, must be denied, without prejudice, because this relief must be sought separately in an adversary proceeding, as required under Bankruptcy Rule 7001(1).

Intermar Financial Corporation ("Intermar") joined in the application for the appointment of a trustee, but opposes the

movant's request for a conversion or dismissal of the case pursuant to 11 U.S.C. § 1112(b).

The hearings continued on three separate trial days and were concluded on June 10, 1987. A prompt decision is required.

### FACTS

1. On March 12, 1987, the debtor, McCorhill Publishing, Inc., filed with this court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and was continued in operation of its business as a debtor in possession pursuant to 11 U.S.C. § 1108.

2. On November 30, 1984, KTO sold to the debtor a reprint and periodical business known as Kraus Reprint and Kraus Periodicals, together with a warehouse and office complex in Millwood, New York for the sum of $7,750,000. The debtor paid $5,000,000 in cash to KTO and as part of the consideration for the purchase the debtor executed and delivered to KTO a promissory note in the sum of $2,750,000, payable over five years with interest at the rate of 9% per annum. The debtor defaulted on this note when it failed to make the first payment of $500,000 which was due on April 11, 1985.

3. The promissory note is secured by a security interest in the trade name "Kraus", inventory, receivables, furniture and equipment used by the debtor. KTO also obtained a second mortgage on the Millwood office and warehouse building which it sold to the debtor.

4. The lien of KTO's second mortgage is junior to a first mortgage which was given to Greater New York Savings Bank ("Greater New York") in the sum of $4,000,000 when Greater New York advanced $4,000,000 to the debtor in connection with the debtor's purchase of the KTO reprint and periodicals business and the Millwood warehouse. The debtor has also defaulted in the payment of the first mortgage held by Greater New York, with the result that Greater New York has obtained a judgment of foreclosure. The sale of the real property pursuant to Greater New York's judgment of foreclosure will extinguish KTO's subordinate mortgage.

5. The debtor has also defaulted on promissory notes given to Citytrust Investment Company ("Citytrust") in the sum of $650,000, which sum was borrowed by the debtor to fund its purchase of the KTO business.

6. After the debtor acquired the KTO business it merged with a corporation called Meridian Productions. Thereafter all of the debtor's stock was acquired by an entity known as New Castle Communications, Inc. The debtor transferred title to the Millwood office and warehouse to a limited partnership known as New Castle Associates and also guaranteed an obligation owed by New Castle Associates to Hopwood Investments, Limited ("Hopwood"). This obligation was evidenced by a promissory note in the amount of $430,-000, dated March 27, 1986. This promissory note was subsequently assigned by Hopwood to Intermar Financial Corporation. The debtor's obligation to Intermar is currently the subject of litigation filed by Intermar in the Supreme Court of the State of New York, County of New York.

7. In addition to its office in Millwood, New York, the debtor also maintains an office at 19 West 36 Street, in New York City. Located at this New York City office are various other affiliated entities known as LPR Publishing, Inc., JPC Publishing Co., Data-Lex, Buckley Little Book Catalogue Co., Associated Faculty Press and Belvedere Associates. The principals of these organizations are the same people who are also directors of the debtor, namely Herbert Cohen, Gerald Cahill and his wife, Linda Cahill. Their attorney, Stanley Schwartz, also maintains an office in this New York City suite.

8. The debtor's financial vice president, David Patrick, testified that he had no financial information regarding the debtor's New York City office. However, he has issued checks drawn on the debtor for $5000 per month to cover the expenses of the New York City office. None of the other entities or people located at the New

York City office pays any rent to the debtor.

9. Mr. Patrick has paid $27,500 to Herbert Cohen for disbursements in connection with the New York City office. There were no records produced to show where the money went.

10. The debtor has advanced $25,000 as a personal loan to Herbert Cohen and $25,000 as a personal loan to Gerald Cahill. Neither Cohen nor Cahill has repaid their loans.

11. There were no books or entries produced to reflect the debtor's participating interest in New Castle Associates. Moreover, Mr. Patrick testified that he had no records to reflect the debtor's sale of the Millwood Warehouse to New Castle Associates.

12. The debtor paid bills and expenses of some of the entities located at the New York City office. Additionally, some of the debtor's employees performed services for these affiliated entities. Those charges and expenses were not repaid to the debtor, although Mr. Patrick testified that they were accumulated in an entry known as the "exchange account". The total of this account is approximately $252,100. The debtor's auditor, Jack Portney, did not know anything about the "exchange account".

13. The debtor maintained a bank account with the Central National Bank about which its financial vice president, David Patrick, had no information. This account is in the custody of Claire Gianina, an employee of one of the affiliated entities at the New York City office. She is not an employee of the debtor. Checks have been issued from this account after the commencement of the debtor's Chapter 11 case in payment of prepetition obligations as well as from several other prepetition bank accounts. The debtor's president, Herbert Cohen, testified that he only found out about this Central National Bank account a few weeks ago. Raymond T. Bogert, a former vice president of LPR Publishing, Inc., also signed checks on this account, although he was not an employee of the debtor.

14. The debtor's financial vice president, David Patrick, testified that the Citytrust obligation of $650,000 and the Hopwood notes, totalling $430,000, were not reflected in any of his financial records.

15. From the foregoing, it is evident that the debtor's financial records are loosely maintained and are incomplete. It appears that the debtor's funds are being siphoned off to pay for the expenses and obligations of other entities in which the debtor's principals are financially interested, all to the detriment of the debtor's creditors.

16. There was insufficient evidence as to any continuing losses or diminution of the debtor's estate since the filing of the Chapter 11 petition. Moreover, there was insufficient proof as to the absence of a reasonable likelihood of rehabilitation. It is, therefore, premature to make an informed determination as to the future prospects of this debtor.

### DISCUSSION

The appointment of a trustee in a Chapter 11 case is governed by 11 U.S.C. § 1104(a) which reads as follows:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interest of creditors any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

The appointment of a trustee in a Chapter 11 case is not the usual procedure

because 11 U.S.C. § 1108 contemplates that the debtor will continue to manage its property and operate its business. The court must weigh all of the factors and interests carefully because the appointment of a trustee is an extraordinary remedy which will cause additional expense to the estate. *In re Main Line Motors, Inc.*, 9 B.R. 782 (Bankr.E.D.Pa.1981); *In re L.S. Good & Co.*, 8 B.R. 312 (Bankr.N.D.W.Va.1980); *Midatlanic National Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.)*, 4 B.R. 635 (Bankr.E.D.N.Y. 1980); *Hotel Associates, Inc. v. Trustees of Central States SE and SW Areas Pension Fund (In re Hotel Associates, Inc.)*, 3 B.R. 343 (Bankr.E.D.Pa.1980). However, when a debtor fails to maintain complete and accurate financial records, or fails to substantiate undocumented transactions, so that there appears to be a confusion in the debtor's accounting system, the courts have viewed these facts as gross mismanagement and have directed the appointment of a Chapter 11 trustee. *In re Main Line Motors, Inc.*, 9 B.R. at 784; *Midlantic National Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.)*, 4 B.R. at 645; *Hotel Associates v. Trustee of Central States SE and SW Areas Pension Fund (In re Hotel Associates, Inc.)*, 3 B.R. at 345. Similarly, where there are questionable inter-company financial transfers and the principals of the debtor occupy conflicting positions in the transferee companies, a trustee should be appointed in the best interests of creditors and all parties in interest in order to investigate the financial affairs of the debtor. *In re Philadelphia Athletic Club, Inc.*, 15 B.R. 60 (Bankr.E.D. Pa.1981); *In re L.S. Good & Co.*, 8 B.R. at 315.

 In the instant case, the debtor's directors have conflicting interests in various affiliated entities located in the same office suite with the debtor. These entities do not pay rent for their occupancy. There are various expenses and obligations which the debtor has assumed or paid with respect to these entities, as reflected in a so-called "exchange account" in the total sum of $252,100. The debtor's president has closely intertwined the affairs of the debtor corporation with those of the affiliated entities in which he has a financial interest which are located in the same suite so that the interests of creditors of this estate may have been prejudiced.

> And the affairs of the corporation are so closely intertwined with those of the individuals that the Bankruptcy Judge was not clearly erroneous in inferring from corporate misdeeds evidence of the individuals' incapacity to manage their affairs.

*In re Brown*, 31 B.R. 583 at 585 (D.D.C. 1983). The debtor has made undocumented loans to its principals which have not been repaid.

> This sort of gratuitous "borrowing" is, moreover, a conflict of interest requiring the appointment of a trustee to protect creditors.

*In re Colby Construction Corp.*, 51 B.R. 113, 116 (Bankr.S.D.N.Y.1985). The debtor's financial vice president has no records or financial information with respect to the numerous transactions affecting the debtor which originated out of its New York City office. Most significantly, the debtor maintains a New York City bank account which is controlled by people from the affiliated entities in the New York office, who were not employees of the debtor and from which post-petition payments have been made for prepetition obligations in violation of 11 U.S.C. § 549. Unauthorized post-petition transfers of estate assets will constitute grounds for the appointment of a trustee. *In re Lavender*, 48 B.R. 393, 396 (Bankr.E.D.Ark.1984); *In re Ford*, 36 B.R. 501, 504 (Bankr.W.D.Ky.1983). The debtor's financial records are incomplete and haphazard. For all of these reasons, a Chapter 11 trustee must be appointed in the best interests of creditors and all parties in interest in order to investigate the financial affairs of the debtor.

## CONVERSION OR DISMISSAL

 Conversion or dismissal of this case pursuant to 11 U.S.C. § 1112(b) is not appropriate at this time. There was no showing that the debtor was experiencing continuous losses or that reorganization was

**1018**

unlikely. The appointment of a trustee will ensure the protection of the debtor's assets so that an informed judgment as to the debtor's future may be made later by the trustee and the creditors of this estate.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

2. KTO has sustained its burden of establishing that a Chapter 11 trustee should be appointed for cause pursuant to 11 U.S.C. § 1104(a)(1) for gross mismanagement of the financial affairs of the debtor by current management.

3. KTO has sustained its burden of establishing that a Chapter 11 trustee should be appointed in the best interests of creditors in accordance with 11 U.S.C. § 1104(a)(2).

4. KTO's motion is granted and the United States trustee shall be directed to appoint a Chapter 11 trustee in this case.

IT IS SO ORDERED.