## In re STEIN AND DAY, INCORPORATED, a/k/a Stein and Day/Publishers, Debtor.

### Bankruptcy No. 87 B 20300.

United States Bankruptcy Court, S.D. New York.

June 6, 1988.

Barr and Faerber, Spring Valley, N.Y., for debtor.

Weil, Gotshal & Manges, New York City, for BookCrafters, U.S.A.

Platzer, Fineberg & Swergold, New York City, for Creditors' Committee.

Drinkle Biddle & Reath, New York City, for Michigan Nat. Bank.

Ross & Hardies, Somerset, N.J., for Coordinated Systems and Services Corp.

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

Coordinated Systems and Service's Corporation ("CSSC"), a New Jersey corporation engaged in the business of providing warehousing and shipping services to book publishers and others, seeks the appointment of a Chapter 11 trustee for the debtor, Stein and Day Incorporated, a/k/a Stein and Day/Publishers ("Stein and Day"). Stein and Day has been a publisher of books for about twenty-six years. CSSC has warehoused and delivered books for the debtor in accordance with orders received from the debtor and its distribution agents, including Henry Holt & Co. CSSC holds a prepetition claim against the debtor for warehousing and shipping services in the approximate amount of $68,000.

Pursuant to a decision dated February 16, 1988, this court certified CSSC for contempt for deliberately failing to comply with a "so ordered" stipulation with the debtor and others which provided for payment of CSSC's obligation to use its best efforts to release and ship the debtor's warehoused books within two days of the receipt of orders. *In re Stein and Day*, 83 B.R. 221 (Bankr.S.D.N.Y.1988). The prompt delivery of these books was essential to the debtor's cash flow needs to meet the terms of a cash collateral order obtained by the debtor's secured creditors. CSSC never even bothered to notify its warehouse manager of the "so ordered" stipulation with result that CSSC did not comply with the "so ordered" stipulation and displayed a callous disregard of the stipulation until after the debtor sought to hold CSSC in contempt.

CSSC then continued its contumacious conduct by filing a complaint with the District Court to terminate the debtor's warehouse relationship and to evict the debtor's inventory without first applying to this court for relief from the automatic stay or for a withdrawal of the reference so that the District Court could entertain the complaint. Consequently, the District Court dismissed CSSC's complaint as a violation of 11 U.S.C. § 362.

CSSC now seeks the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104 on the ground that the debtor has breached the "so ordered" stipulation by not establishing an escrow account into which all proceeds of the warehoused inventory were to be deposited and by paying the proceeds of the warehoused inventory to Michigan National Bank ("MNB"), a secured creditor, pursuant to a cash collateral order obtained by MNB and signed by this court.

During the debtor's contempt proceeding against CSSC for the latter's violation of the "so ordered" stipulation, CSSC never complained that the debtor breached the "so ordered" stipulation by failing to establish an escrow fund for the proceeds from warehouse shipments.

### FINDINGS OF FACT

1. The debtor filed with this court its voluntary petition for reorganizational relief under Chapter 11 of the Bankruptcy Code on June 25, 1987 and continued as a debtor in possession pursuant to 11 U.S.C. § 1108.

2. Sol Stein, president of the debtor, testified that an escrow fund called for under the "so ordered" stipulation dated September 30, 1987 was not set up because he assumed it would be set up as soon a money came in from CSSC shipments of orders obtained by the debtor's distributor, Henry Holt & Co.. He also testified that CSSC did not make shipments of the debtor's books in the first half of October 1987, with the result that CSSC undermined the debtor's efforts. Additionally, he said that when CSSC finally did ship out the debtor's books, they shipped out soiled books, unjacketed books and books belonging to other publishers, so that the debtor's customers were antagonized and would not pay for the objectionable shipments.

3. Sol Stein also objected to the fact that CSSC's storage charges increased in amount notwithstanding the fact that the agreed storage rate had not increased, whereas the inventory was reduced by the

belated shipments that CSSC ultimately did make. Stein said that the increase in storage charges in the face of no corresponding increase in inventory was further evidence of CSSC's bad faith conduct.

4. Vincent Diamanti, controller of the debtor, testified that the debtor did not set up the escrow fund called for by the "so ordered" stipulation and did not segregate the proceeds from book shipments because the proceeds from the accounts receivable had to be paid to MNB in accordance with its cash collateral order.

5. Patricia Day, vice president of the debtor, testified that an escrow account was not established because CSSC did not start shipping the debtor's books until the middle of October, 1987. She said that the debtor did not receive any payments for remainder orders, except from Marlboro Books, Inc. She further testified that by the time the money came in the debtor was required to comply with MNB's cash collateral order. She said that if CSSC had shipped the debtor's books promptly in accordance with the September 30, 1987 "so ordered" stipulation, the debtor would have been able to pay both MNB and CSSC. However, because of CSSC's delay in making shipments, the debtor could only pay MNB pursuant to its cash collateral order.

6. Martin Bienenstock, an attorney for Bookcrafters U.S.A., Inc., a secured creditor of the debtor, was subpoenaed to testify by CSSC. He said that he warned CSSC's counsel that CSSC's complaint, filed in the District Court to terminate the warehouse relationship and to evict the debtor's inventory from the CSSC warehouse was a violation of the automatic stay, but that CSSC did not withdraw its complaint.

7. Greg Borri, an attorney for MNB, another secured creditor of the debtor, was also subpoenaed to testify by CSSC. He said that MNB received payments from the proceeds of CSSC's shipments of the debtor's books in accordance with MNB's cash collateral order.

8. Helen Davis Chaitman, an attorney for CSSC, was called to testify by counsel for Bookcrafters U.S.A., Inc. She said that she did not know if the debtor's estate had any unencumbered assets available to pay the administrative expenses of a Chapter 11 trustee and for the professionals retained by the trustee. Ms. Chaitman also testified that it was her understanding that CSSC did not have to make any shipments for the debtor until the debtor's prepetition defaults were cured in accordance with 11 U.S.C. § 365.

9. The debtor's failure to establish an escrow account, because it paid the proceeds from the warehouse shipments to MNB in accordance with the MNB's secured interest in the debtor's accounts receivable and pursuant to its cash collateral order, does not constitute fraud, dishonesty, incompetence or gross mismanagement.

10. The proof offered by CSSC in support of its motion for a Chapter 11 trustee did not establish that when the debtor entered into the "so ordered" stipulation on September 30, 1987 it had no intention of complying with the stipulation or was guilty of any fraudulent or dishonest conduct so as to call for the appointment of a Chapter 11 trustee. Morevoer, there was no proof that the debtor's management was incompetent or that the debtor's business was grossly mismanaged.

## DISCUSSION

Although it has been said that a good offense is the best defense, it does not follow that the aggravation of post-petition contumacious conduct will minimize the penalty for contempt. Having been certified by this court for contempt for deliberately failing to comply with a "so ordered" stipulation calling for the prompt shipment of the debtor's warehoused books, CSSC thereafter violated the automatic stay imposed under 11 U.S.C. § 362 and the reference of this case to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a) by filing a complaint against the debtor in the District Court seeking to terminate the debtor's warehousing contract and evicting the debtor's inventory of books from CSSC's warehouse. CSSC then compounded its disobedience of this court's "so ordered"

stipulation, dated September 30, 1987, by delivering soiled and unjacketed books to the debtor's customers which further undermined the debtor's urgent need for a steady cash flow from book sales to satisfy a cash collateral order obtained by Michigan National Bank and Bookcrafters U.S.A., Inc., two creditors with prepetition secured interests in the debtor's accounts receivable. CSSC's conduct resulted in the debtor's receipt of insufficient cash to satisfy the secured creditor's cash collateral order and to fulfill the debtor's obligation under the "so ordered" stipulation for the establishment of an escrow account for the payment of CSSC's warehousing and shipping charges. In light of the competing demands for payment from the secured creditors and the debtor's obligation to segregate the proceeds from the sale of warehouse books for payment of CSSC's warehousing changes, the debtor chose to pay the secured creditors in accordance with the cash collateral order.

Having contributed to the cash squeeze confronting the debtor by not honoring the "so ordered" stipulation, CSSC now seeks the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104 on the ground that the debtor and its secured creditors have conspired to deprive CSSC of the warehouse proceeds in escrow, to which CSSC was entitled under the "so ordered" stipulation.

■ The appointment of a trustee in a Chapter 11 case is governed 11 U.S.C. § 1104(a) which reads as follows:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor or by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interest of creditors any equity security holders, and other interests of the estate, without regard to the number of holders or securities of the debtor or the amount of assets or liabilities of the debtor.

The appointment of a trustee in a Chapter 11 case is not the usual procedure because 11 U.S.C. § 1108 contemplates that the debtor will continue to manage its property and operate its business. The court must weigh all of the factors and interests carefully because the appointment of a trustee is an extraordinary remedy which will cause additional expense to the estate. *In re McCorhill Publishing, Inc.* 73 B.R. 1013 (Bankr.S.D.N.Y.1987); *In re Main Line Motors, Inc.,* 9 B.R. 782 (Bankr.E.D. Pa.1981); *In re L.S. Good & Co.,* 8 B.R. 312 (Bankr.N.D.W.Va.1980); *Midatlantic National Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.),* 4 B.R. 635 (Bankr.E.D.N.Y.1980); *Hotel Associates, Inc. v. Trustees of Central States SE and SW Areas Pension Fund (In re Hotel Associates, Inc.),* 3 B.R. 343 (Bankr. E.D.Pa.1980).

■ A trustee will be appointed if a debtor has engaged in fraudulent conduct. Thus, in *In re Bonded Mailings, Inc.,* 20 B.R. 781 (Bankr.E.D.N.Y.1982), the court ordered the appointment of a trustee after an examiner found that the debtor had committed fraud upon one of its creditors by conduct designed to frustrate the creditor's attempt to enforce its judgment which resulted in a shifting of assets between two corporate debtors and which hopelessly confused their records. Similarly, a trustee was appointed in *In re McCordi Corporation,* 6 B.R. 172 (Bankr.S.D.N.Y.1980), when this court found that the debtor had engaged in prepetition check kiting. Postpetition mismanagement is also grounds for the appointment of a trustee. Thus, a trustee was appointed in *St. Louis Globe–Democrat, Inc.,* 63 B.R. 131 (Bankr.E.D. Mo.1985), where the debtor paid operating expenses with funds withheld from employees' pay and wrote checks on accounts with insufficient funds. A trustee also was appointed in *In re Caroline Desert Disco,* 5

B.R. 536 (Bankr.C.D.Cal.1980), where the debtor failed to comply with local rules. Moreover, a debtor's mismanagement warranted the appointment of a trustee in *In re McCorhill Publishing, Inc.,* 73 B.R. 1013, when this court found that the debtor's mismanagement had conflicting interests in affiliated companies and that they had engaged in self-serving transactions which benefitted the affiliated companies and their own interests.

■ In the instant case, this court has found that CSSC's conduct in disobeying the "so ordered" stipulation dated September 30, 1987, followed by CSSC's belated shipment of books, many of which were soiled and unjacketed, contributed to undermining the debtor's cash flow and the aggravation and loss of customers. Thus, the debtor received insufficient funds to satisfy the secured creditors' cash collateral order and the debtor's obligation to establish an escrow fund with the proceeds from warehouse shipments. Having been confronted with conflicting demands for payment from the proceeds of its sales, the debtor chose to honor the secured creditors' cash collateral order, with the result that no escrow fund could be established and CSSC did not receive any proceeds from the debtor's book sales. These circumstances, which followed from CSSC's own contumacious conduct, do not amount to fraud, dishonesty, incompetence or gross mismanagement of the debtor's affairs so as to justify the appointment of a Chapter 11 trustee.

■ Not only has CSSC not established cause for the appointment of a Chapter 11 trustee, but it also appears that such an appointment would not be in the best interests of creditors. The secured creditors and the official committee of unsecured creditors vigorously oppose the appointment of a trustee. They note that the debtor's managment is sufficiently knowledgeable and experienced in the marketing of the debtor's books. Moreover, they do not wish to burden this estate with the additional administrative expenses associated with the appointment of a trustee, especially since there are no unencumbered assets to pay for the additional expense. Helen Davis Chaitman, counsel for CSSC, testified that CSSC would not agree to pay for the expenses entailed in the appointment of a trustee, notwithstanding that CSSC is the only party in interest who seeks such an appointment. A secured creditor who does not expressly consent to bear the administrative expenses of a trustee appointed for its benefit in a Chapter 11 case may be held to have impliedly consented to assume such charges when there are no free assets to pay the trustee and the trustee's counsel and where the secured creditor, nevertheless, moved for the appointment of a Chapter 11 trustee. *In re Hotel Associates, Inc.,* 6 B.R. 108 (Bankr. E.D.Pa.1980). In the instant case, no such consent may be inferred because CSSC's counsel expressly refused to consent to CSSC's assumption of these costs, which would then have to be borne by the estate and its creditors, all of whom oppose the appointment of a trustee.

■ Generally, the courts have applied a cost-benefit analysis, weighing the expense and time associated with the appointment of a trustee against potential benefits to the estate. *Committee of Dalkon Shield Claimants v. A.H. Robins Co., Inc.,* 828 F.2d 239 (4th Cir.1987); *In re Century Glove, Inc.,* 73 B.R. 528 (Bankr.D.D.C. 1987); *In re McCorhill Publishing Co., Inc.,* 73 B.R. at 1017; *In re William A. Smith Construction Co., Inc.,* 77 B.R. 124 (Bankr.N.D.Ohio 1987); *In re Parker Grande Development, Inc.,* 64 B.R. 557 (Bankr.S.D.Ind.1986); *In re General Oil Distributors, Inc.,* 42 B.R. 402 (Bankr.E.D. N.Y.1984). A trustee would not benefit any interests in this case. Not only will the costs of a trustee burden this estate, but current management's experience and knowledge are essential to the debtor's future. Indeed, it appears that CSSC's motion for the appointment of a trustee is simply a tactical response to the debtor's successful application to cite CSSC for its contumacious conduct.

■ The issue regarding the debtor's obligation to establish an escrow account could have been raised by CSSC during the

contempt hearing. A motion for the appointment of a trustee is not the appropriate means for relitigating matters that should have been, but were not, raised in a previous proceeding.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

2. CSSC has not established cause for the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1), nor has CSSC shown that the appointment of a trustee would be in the best interests of creditors, any equity security holders and other interests of the estate as provided in 11 U.S.C. § 1104(a)(2).

3. Accordingly, CSSC's motion for the appointment of a trustee is denied.

4. The debtor's oral motion for sanctions against CSSC pursuant to Bankruptcy Rule 9011 and Bookcrafter's oral motion for reimbursement of its counsel fees for having gathered and produced records pursuant to CSSC's subpoena and which were not called for by CSSC at the hearing, should be presented in the form of written motions, with copies thereof served on CSSC in advance of the return date.

SETTLE ORDER on notice.