**In re NORTH STAR CONTRACTING CORP., Debtor.**

**Bankruptcy No. 89 B 20883.**

United States Bankruptcy Court,
S.D. New York.

May 31, 1991.

Leslie Trager, New York City, for William T. McSpedon.

Angel & Frankel, P.C., New York City (John H. Drucker and David H. Wander, of counsel), for debtor.

Siegel, Sommers & Schwartz, New York City (James A. Beldner, of counsel), for Unsecured Creditors' Committee.

## DECISION ON MOTION FOR AN ORDER TO CONVERT TO CHAPTER 7 OR APPOINT A TRUSTEE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The largest unsecured creditor in this Chapter 11 case, William T. McSpedon ("McSpedon"), has moved pursuant to 11 U.S.C. § 1112(b) to convert this reorganization case to a Chapter 7 liquidation. Alternatively, McSpedon seeks the appointment of a Chapter 11 trustee in accordance with 11 U.S.C. § 1104.

### FINDINGS OF FACT

1. On November 28, 1989, the debtor, North Star Contracting Corp., filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. The debtor continued in possession of its business and property in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The debtor is in the construction business. Its major project, which was the primary subject of McSpedon's criticism, was the installation of 49 switches for the New York Transit Authority.

3. The debtor has filed a plan of reorganization which proposes to pay administration and secured claims in full and between 70% to 100% to unsecured claims. The debtor has operated profitably in the post-petition phase of this case and has paid its taxes and its post-petition expenses in the ordinary course of its business.

4. All of the members of the creditors' committee, except McSpedon, have approved the terms of the proposed plan. The creditors' committee supports the debtor in opposition to McSpedon's motion for conversion or for the appointment of a trustee.

5. McSpedon's basic position is that the debtor understated its revenues by failing to recognize additional expenses incurred by change orders [1] until the debtor filed its annual report, which is based on a fiscal year ending May 31.

6. The accountant for the creditors' committee is the firm of BDO Seidman & Co. ("BDO"). William K. Lenhart, the partner from BDO in charge of this case testified that he continuously monitored the books and records of the debtor and that he was satisfied with the information reported. However, he did not learn until recently that the debtor accumulated actual costs arising under change orders until the end of the debtor's fiscal year, ending May 31. However, such accumulation of expenses also does not take into consideration the additional revenue generated by such change orders, so that the result could be substantially a wash, with expenses and revenues cancelling each other.

7. In this case, a stated figure for estimated costs of $804,000.00 for jobs in progress did not reflect additional actual costs arising under change orders. Conversely, the debtor's revenue figures did not reflect work completed, but not yet billed due to the change orders. The debtor's balance sheet statement submitted to the creditors' committee for the period ending August 31, 1990, reflected estimated revenues. This information was furnished by the debtor to the accountant for the creditors' committee.

1. Change orders are modifications of an original contract that effectively change the provisions of the contract without adding new provisions. Change orders include changes in specifications or design, method or manner of performance, equipment, materials, facilities, site, and period for completion of the work. They may be initiated by the contractor or the customer.

8. McSpedon's expert witness, Arthur Levy, who is a certified public accountant, but who did not qualify as an expert for purposes of construction industry accounting practices, was not a disinterested witness. His firm is engaged by McSpedon's corporation for accounting business and receives a retainer from McSpedon for this work. Levy candidly admitted that he could not remember all the prerequisites under standard, accepted accounting principles for applying the percentage of completion method of accounting in the construction industry. In fact, Levy could not point to any accounting rule that specifies a fixed time period when adjustments should be made to estimated costs, other than to say that the debtor's method of making adjustments annually in conjunction with its fiscal year was improper because it was not conducive to full disclosure.

9. Lenhart, the partner in BDO Seidman & Co., the accountants for the creditors' committee, has special expertise in construction accounting. Of the approximately 2,000 accountants employed by the firm, there are from 10 to 20 construction specialists, including Lenhart. He developed the education manual used by BDO for construction accounting. Lenhart testified that if the adjustments for actual cash and revenue were made, the result would be a reduction of approximately $150,000.00 in the debtor's revenues during the six month period involved, which simply would reduce the debtor's profit, but would not create a loss. Lenhart did not believe that the debtor's accounting methods were either fraudulent or a misrepresentation of its financial position.

10. Lenhart further testified that the liquidation value of the debtor's property would probably produce a very small distribution to unsecured claims, and perhaps they would receive nothing. Based on the accounting figures, the debtor's plan projects a 15% business profit from the debtor's construction contracts.

11. Based on the evidence in this case, McSpedon has failed to satisfy his burden of establishing cause for the appointment of a Chapter 11 trustee. There was no fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management that would warrant the appointment of a Chapter 11 trustee.

12. With regard to the portion of McSpedon's motion to convert this case to a Chapter 7 liquidation pursuant to 11 U.S.C. § 1112(b), he has not satisfied his burden of proving that cause exists for conversion. The disagreement between the accounting witnesses as to the proper accounting method for reflecting percentage of completions for construction contracts does not constitute cause.

13. In light of the fact that the debtor has proposed a plan of reorganization, the only two provisions in 11 U.S.C. § 1112(b) which conceivably could apply are:

(1) continuing loss for or diminution of the estate and absence of reasonable likelihood of rehabilitation, and

(2) unreasonable delay by the debtor that is prejudicial to creditors.

14. McSpedon has not established that there are continuing losses and that there is no likelihood of rehabilitation. Indeed, rehabilitation appears to be very likely now. Most of the creditors and the creditors' committee support the debtor's plan.

15. There is no proof of any continuing losses or any diminution of the debtor's estate that is prejudicial to creditors. Accordingly, there is no basis for converting this Chapter 11 case to Chapter 7.

16. Levy also testified that the debtor's monthly financial statements did not comply with the United States trustee's local rules because no balance sheets were filed. There was no further evidence adduced as to the debtor's failure to comply with the United States trustee's rules. The United States trustee has not objected to the debtor's financial reporting nor has any other creditor or the creditors' committee objected to the monthly financial reports filed by the debtor. McSpedon did not produce any proof as to this issue other than Levy's bare conclusion. Accordingly, this objection must be discounted for lack of evidence.

## DISCUSSION

### Conversion

 A disgruntled holder of the largest unsecured claim is free to vote against the debtor's proposed plan of arrangement, but he may not convert the Chapter 11 case to Chapter 7 for liquidation simply because he disagrees with the accounting method used by the debtor to reflect revenues and costs with respect to construction contracts based on a percentage of completion formula. The fact that the debtor did not update the additional costs generated by change orders on a daily, weekly or monthly basis, but made the adjustments for its annual financial records at the close of its fiscal year, does not mean that the debtor's management acted fraudulently or that cause exists for conversion of the case to Chapter 7. The debtor also did not include as income the additional revenue that was generated by the change orders. Although the moving creditor, McSpedon, would have preferred to see more current estimates as to additional costs, the creditors' committee and their accountants were satisfied with the debtor's current books and records, as well as the original estimates. There was no evidence that the debtor concealed any information regarding the change orders or made any false representations as to the actual figures. At most, there exists an accounting disagreement as to whether the debtor's delay in updating estimated costs based on change orders until the close of the debtor's fiscal year violates generally accepted and recognized accounting principles. The objecting creditor's accounting witness is not a disinterested witness because his firm is retained to do accounting work for McSpedon's corporation. On the other hand, the accountant for the creditors' committee is not controlled by any party in this case and is a recognized specialist in construction industry accounting. He concluded that there was no reason to believe that the debtor's method of accounting or the information contained in its books and records was either fraudulent or misrepresented the debtor's financial condition.

McSpedon cites *Matter of Pied Piper Casuals, Inc.*, 40 B.R. 723 (Bankr.S.D.N.Y. 1984) in support of his motion for conversion to Chapter 7. However, *Pied Piper* involved grossly exaggerated sales projections which masked actual losses incurred by a debtor which had no hope of rehabilitation. In the instant case, after setting off unbilled revenues against additional costs generated by change orders, the resulting figures continued to show a profitable business operation. The debtor is favorably positioned to proceed to effect a confirmation of its proposed plan of reorganization. The objecting creditor also cites *Matter of Natrl Plants & Lands Management Co., Ltd.*, 68 B.R. 394 (Bankr.S.D.N.Y.1986) as supporting his position. However, in that case, this court granted the United States trustee's motion to convert the case to Chapter 7 because of continuing losses and the debtor's admission that it was unable to continue in business. There are no continuing losses in the instant case and reorganization is likely. Hence, the objecting creditor's motion to convert to Chapter 7 is denied for failing to prove a justifiable basis for conversion in accordance with 11 U.S.C. § 1112(b).

### Chapter 11 Trustee

(1) The appointment of a trustee in a Chapter 11 case is governed by 11 U.S.C. § 1104(a) which reads as follows:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor or by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of

holders or securities of the debtor or the amount of assets or liabilities of the debtor.

■ The appointment of a trustee in a Chapter 11 case is not the usual procedure because 11 U.S.C. § 1108 contemplates that the debtor will continue to manage its property and operate its business. The court must weigh all of the factors and interests carefully because the appointment of a trustee is an extraordinary remedy which will cause additional expense to the estate. *In re Stein and Day, Inc.*, 87 B.R. 290 (Bankr.S.D.N.Y.1988); *In re McCorhill Publishing, Inc.*, 73 B.R. 1013 (Bankr.S.D.N.Y.1987); *In re Main Line Motors, Inc.*, 9 B.R. 782 (Bankr.E.D.Pa.1981); *In re L.S. Good & Co.*, 8 B.R. 312 (Bankr.N.D.W.Va. 1980); *Midatlantic National Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.)*, 4 B.R. 635 (Bankr.E.D.N.Y.1980); *Hotel Associates, Inc. v. Trustees of Central States SE and SW Areas Pension Fund (In re Hotel Associates, Inc.)*, 3 B.R. 343 (Bankr.E.D.Pa.1980).

■ A trustee will be appointed if the debtor has engaged in fraudulent or dishonest conduct. *In re McCordi Corporation*, 6 B.R. 172 (Bankr.S.D.N.Y.1980). In the instant case, the failure to update more frequently the debtor's estimated costs by the additional costs attributable to subsequent change orders is neither fraudulent nor dishonest. The debtor's accounting practice was to make such adjustments at the close of its fiscal year. Even if the debtor's practice should have been supplemented by more recent updates, the difference would not have converted the debtor's figures from profitable results to a loss because the debtor also excluded the unbilled revenues derived from the change orders.

■ Post-petition incompetence or gross mismanagement are also grounds for the appointment of a trustee. When a debtor fails to maintain complete and accurate financial records, or fails to substantiate undocumented transactions, so that there appears to be a confusion in the debtor's accounting system, the courts have viewed these facts as gross mismanagement and

have directed the appointment of a Chapter 11 trustee. *In re McCorhill Publishing, Inc.*, 73 B.R. 1013 (Bankr.S.D.N.Y.1987); *In re Main Line Motors, Inc.*, 9 B.R. 782 (Bankr.E.D.Pa.1981); *Midatlantic National Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales, Inc.)*, 4 B.R. 635 (Bankr.E.D.N.Y.1980); *Hotel Associates, Inc. v. Trustees of Central States SE and SW Areas Pension Fund (In re Hotel Associates, Inc.)*, 3 B.R. 343 (Bankr.E.D.Pa. 1980).

■ In the instant case the debtor's financial records are not incomplete or haphazard. The objecting creditor's main argument is that the original estimated cost figures were not regularly updated with actual additional costs until the end of the debtor's fiscal year. The accounting witnesses disagree as to whether the debtor's accounting method meets generally recognized accounting principles. Even if the debtor should have updated its estimated costs more frequently with actual cost figures available to its managers in the field, the net result, after also including additional revenues, still reveals a profitable operation. The debtor has made available to the accountant for the creditors' committee all of its books and records, which have been thoroughly reviewed, with the conclusion that these records are neither fraudulent nor do they misrepresent the debtor's financial condition. In these circumstances, the facts do not warrant the appointment of a Chapter 11 trustee. Moreover, in weighing the expense and delay associated with the appointment of a Chapter 11 trustee against the potential benefits to the estate, it is clear that a trustee would not benefit any interests in this case. *See In re Stein and Day, Inc.*, 87 B.R. 290, 295 (Bankr.S.D.N.Y.1988). The costs of a trustee will only burden this estate with additional administrative expenses and will not be in the best interests of creditors. The creditors' committee supports the continued operations by the debtor's current management whose experience and knowledge are essential to the debtor's specialized construction business. Therefore, McSpedon's request for the appointment of a Chapter 11 trustee is denied.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

2. McSpedon has not established cause for the conversion of this Chapter 11 case to Chapter 7 for liquidation in accordance with 11 U.S.C. § 1112(b). Accordingly, his motion for conversion to Chapter 7 is denied.

3. McSpedon has not established cause for the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1), nor has he shown that the appointment of a trustee would be in the best interests of creditors, any equity security holders and interests of the estate, as provided in 11 U.S.C. § 1104(a)(2). Therefore, McSpedon's motion for the appointment of a Chapter 11 trustee is denied.

SETTLE ORDER on notice in accordance with the foregoing findings and conclusions.